IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARL DAVED EVANS. § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:20-cv-2100-L (BT) |
| § | |
| CHASE PELTIN, et al. § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Carl Daved Evans, a federal prisoner, filed this *pro se* civil rights action against various defendants raising causes of action under 42 U.S.C. § 1983. *See* ECF No. 3. The Court granted Evans leave to proceed *in forma pauperis* and withheld service subject to screening his complaint. ECF No. 6. The Court also issued a Magistrate Judge's Questionnaire ("MJQ") to Evans so that he could clarify his claims.[1] *See* ECF No. 10. Having received Evans's responses to the MJQ, and having screened the Complaint, the undersigned now recommends that the Court dismiss this action under 28 U.S.C. §§ 1915A and 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

---

[1] Responses to these questionnaires become part of the pleadings. *See Swaringen v. Bell*, 2019 WL 2870951, at *3 (N.D. Tex. 2019) (citation omitted), *rep. and rec. adopted*, 2019 WL 2869825 (N.D. Tex. July 3, 2019).

1

**Background**

Evans's suit involves five claims against various state actors for false arrest and false imprisonment, as well as one claim against the district attorney of Montague County, Texas for "intentionally and maliciously initiating false criminal proceedings" against him. ECF 3 at 9. He alleges the following:

On May 15, 2017, Defendants Peltin and Hughes—a deputy and investigator with the Montague County Sheriff's Department respectively— "maliciously and falsely" arrested Evans on charges of aggravated assault. Evans claims that there was no probable cause to make the arrest, which he claims was simply a ruse to "raid" his house. *See* ECF No. 3 at 6; ECF No. 13 at 5. A bond hearing was held the next day. ECF 13 at 5. According to Evans, the charge was ultimately dismissed.

Next, Evans was arrested on October 4, 2017 by Defendants Holcomb and Berry of the Nocona, Texas Police Department for aggravated assault. Evans claims that the arrest was intentional, malicious, and made without probable cause. Evans alleges that a bond hearing was held on this charge the next day, October 5, 2017, and he provided the Court with a copy of a document purportedly from the Montague County Sheriff's Department to confirm this. ECF No. 13 at 17. According to Evans, the charge was subsequently dismissed.

Evans was again arrested in November 2017 by Defendant Fisher of the Montague Sheriff's Department for felony trash dumping. Evans claims that the arrest was intentional, malicious, and made without probable cause. He claims that a bond hearing on the charge was held, and he provided the Court with a copy of a document indicating that a bond hearing was held on this charge on November 18, 2017. *See* ECF 13 at 13. According to Evans, the felony trash dumping charge was subsequently dismissed.

Next, on December 8, 2017, Evans was arrested by Defendant Gentry of the Montague Sheriff's Department for jay walking. He claims that the arrest was intentional, malicious, and made without probable cause. He provided the Court with a copy of a document indicating that a bond hearing was held on this charge on December 9, 2017. *See* ECF 13 at 9. According to Evans, the jaywalking charge was subsequently dismissed.

Evans claims that he was next arrested on January 13, 2019, by Defendant Berry for "failure to comply with sex offender registration." *See* ECF 3 at 8. He claims that the arrest was intentional, malicious, and made without probable cause. Evans asserts that he was registered to a 703 Young Street location and that this information was present on a "blue card" that he carried. ECF 13 at 25. He was staying at the 703 Young Street location because he was "taking down an old house." *Id.* at 26. Defendant Berry came by every day that he worked, taking pictures of the property,

3

and pulling over anyone that left the house. *Id.* Defendant Berry told Evans that he had to sell the house or that Defendant Berry would keep issuing him tickets. *Id.* Indeed, Defendant Berry had been issuing citations to Evans for residing at the 703 Young Street address for more than a year. *Id.* Evans maintains that Officer Berry could have "easily check[ed] the sex-offender registration data base" to verify his place of registration. *Id.* at 25. According to Evans, this charge was subsequently dismissed.

Finally, Evans claims that Defendant Casey Polhemus, the district attorney for Montague County, "intentionally and maliciously initiat[ed] false criminal proceedings against [Evans] for the felony offense of aggravated perjury that resulted in his arrest and imprisonment . . . ." ECF 3 at 9.

**Preliminary Matters**

Title 28 U.S.C. § 1391(b) governs venue of a federal cause of action. That statute states in pertinent part:

A civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial

> district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In this case, all the named defendants are located in Montague County, Texas, and the events giving rise to Evans's claims occurred in Montague County. Montague County is in the Wichita Falls division of the Northern District of Texas. Thus, Evans should have filed his lawsuit in the Wichita Falls division.

Although venue would be more appropriate in the Wichita Falls division and the Court could transfer this case to that division, *see* 28 U.S.C. § 1406(a) (a court has the authority to transfer a case in the interest of justice to any district or division in which the action could have been brought), the Court—in the interest of justice—should decline to transfer this case. The Court has already invested significant judicial resources in screening Evans's complaint and, as explained below, Evans's claims should be dismissed under 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

**Legal Standards**

Evans's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. That section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be

5

>granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

A. <u>Evans's 2017 False Arrest and False Imprisonment Claims are Barred by the Statute of Limitations</u>

Evans's 2017 false arrest and false imprisonment claims are barred by the statute of limitations. A civil rights action under 42 U.S.C. § 1983 is governed by a two-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 250 (1989) (stating federal court should look to general personal

injury limitations period of forum state); *Ali v. Higgs*, 892 F.2d 438, 439 (5th Cir. 1990) (finding limitations period in Texas is two years). "Although state law sets out the limitations period, federal law determines when the cause of action accrues." *Powell v. Wagner*, 2018 WL 9439864, at *2 (S.D. Tex. July 31, 2018) (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). Under federal law, a "cause of action accrues, so that the statutory period begins to run, when the plaintiff knows or has reasons to know of the injury which is the basis of the action." *Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). "The existence of an injury for false arrest or false imprisonment does not depend on the outcome of any subsequent criminal proceedings." *Powell*, 2018 WL 9439864, at *2 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). The statute of limitations for false arrest and imprisonment claims begins to run when the alleged victim is first held pursuant to legal process, not the date of the arrest or imprisonment. *Wallace,* 549 U.S. at 389.

The Fifth Circuit has indicated that a bond hearing is sufficient legal process to start the statute of limitations for false arrest and false imprisonment claims. *See Reed v. Edwards*, 487 F. App'x 904, 906 (5th Cir. 2012) ("We conclude that a bond hearing satisfies the definition of legal process within the meaning of *Wallace* . . . .") (per curiam); *see also Terry v. Hubert*, 609 F.3d at 757, 763 (5th Cir. 2010) (holding that a warden who was sued under § 1983 "could reasonably have concluded that

7

[the plaintiff's] detention was pursuant to process," because the plaintiff was "afforded a bond hearing on his charges"). And other courts—both within and outside of this Circuit—have reached the same conclusion. *See Vodicka v. Ermatinger*, 2021 WL 1086979, at *5 (N.D. Tex. 2021) (finding that the plaintiff's bond hearing "likely served as legal process sufficient to trigger the accrual of his false-arrest claim") (citing *Reed*, 487 F. App'x at 906); *Jeanty v. TXFM, Inc.*, 2020 WL 5797781, at *3 (E.D. Tex. Sept. 29, 2020) ("A bond hearing constitutes legal process under *Wallace*.") (citing *Terry*, 609 F.3d at 763; *Laborde v. Lunceford*, 2010 WL 3238311, at *3 (E.D. Tex. Aug. 13, 2010)); *VanBuren v. Spoon*, 2019 WL 2063523, at *3 (W.D. La. May 2, 2019) (same); *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1163 (6th Cir. 2021) (noting that the plaintiff's bond hearing likely triggered the accrual date for his false arrest claim) (citing *Reed*, 487 F. App'x at 906; *White v. Hiers*, 652 F. App'x 784, 786 (11th Cir. 2016) (per curiam); *Bradley v. Sheriff's Dept' St. Landry Par.*, 958 F.3d 387, 391-92 (5th Cir. 2020)).

Based on this jurisprudence, The Court finds that a bond hearing is the type of legal process necessary to trigger the accrual period for false arrest and false imprisonment claims under Section 1983, which dooms Evan's 2017 false arrest and false imprisonment claims. For each of Evans's four arrests in 2017, a bond hearing was held shortly after he was taken into custody. Evans was arrested on May 15, 2017, for aggravated assault,

and a bond hearing was held the next day. *See* ECF 13 at 5. Evans was arrested on October 4, 2017, for aggravated assault, and a bond hearing was held the next day. *See id.* at 19. Evans was arrested on November 18, 2017 for felony trash dumping, and a bond hearing was held that same day. *See id.* at 13. Evans was arrested on December 8, 2017, for jay walking, and a bond hearing was held the following day. *See id.* at 9. Thus, because Evans did not file this suit until August 7, 2020, his 2017 false arrest and false imprisonment claims are barred.

B. <u>Evans's allegations against Defendant Berry fail to state a claim for false arrest.</u>

Evans next claims that, in January 2019, Defendant Berry falsely arrested him for failing to comply with his sex-offender registration obligations. Although this claim is not barred by limitations, it should be dismissed for failure to state a claim upon which relief may be granted.

"[T]o state a § 1983 claim for false arrest/false imprisonment, [Evans] must plausibly allege that [Defendant Berry] 'did not have probable cause to arrest him.'" *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "'[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 232

9

(1983)). Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability that criminal activity has occurred. *See United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir.), *cert denied*, 502 U.S. 1008 (1991).

The Texas sexual-offender registration requirements are complex and highly-specific. Article 62.102 of the Texas Code of Criminal Procedure provides that: "[a] person commits an offense if the person is required to register and fails to comply with any requirement of this chapter." Assuming proper notification, a sex offender must register in any location in which he resides or intends to reside for more than seven days. *See* TEX. CODE CRIM. PROC. ANN. art. 62.051. An offender who changes his residence is required to register within seven days with the local law enforcement authority in the municipality or county in which the offender's new residence is located. *Id.* at 62.055. Offenders must also register in any location where they spend more than 48 consecutive hours at least three times a month. *Id.* at 62.059.

The Court asked Evans to provide all the facts supporting his failure-to-register false arrest/false imprisonment claim. In response, Evans claims that he registered at a residence at 703 Young Street in Nocona, Texas and that he possessed a "blue card" that reflected this information. ECF 13 at 25. He asserts that Officer Berry could have easily checked the sex-offender registration database to verify his registration. *Id.* at 26,

However, he also states that he was actually staying in his fifth wheel trailer because he was "taking down an old house" on the property. *Id.* at 26. The city refused to allow water or electrical service to Evans's fifth wheel, and Defendant Berry issued Evans citations for living in his trailer at the 703 Young Street location. *Id.*

Evans's allegations regarding lack of probable cause are vague and conclusory. He fails to identify any specific component of the sex offender registration law that he allegedly violated. He also fails to specifically plead the facts that led to his arrest. The paucity of factual content provided does not allow the Court to determine that Evans has shown, for pleading purposes, an absence of probable cause. Thus, the Court should dismiss his claim against Defendant Berry for failure to state a claim upon which relief may be granted.

Ordinarily, a *pro se* plaintiff should be granted the opportunity to amend his complaint prior to a dismissal but leave to amend is not required when a plaintiff "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Here, because Evans already responded to a questionnaire (ECF No. 13), further leave to amend is not necessary, and his claim may be dismissed with prejudice. *See, e.g., Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been

11

recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.") (citation omitted); *Richardson v. County of Dallas*, 2018 WL 1156004, at *5 (N.D. Tex. Feb. 7, 2018) (noting that action should be dismissed with prejudice where the plaintiff had been afforded the opportunity to plead his best case through his verified answers to the screening questionnaire) (citations omitted).

C.   District Attorney Polhemus is immune from Evans's claim.

Finally, Evans sues Defendant Polhemus—the district attorney of Montague County—for "maliciously initiating false criminal proceedings against [him] for the felony offense of aggravated perjury." ECF No. 3 at 9.

A prosecutor, however, "enjoys absolute immunity when her actions 'are intimately associated with the judicial phase of the criminal process.'" *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016) (citation omitted). When deciding whether immunity applies, the Court employs a functional approach, looking "to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). The Fifth Circuit has specifically held that a prosecutor is entitled to absolute immunity for "initiating and pursuing a criminal prosecution . . . ." *Loupe*, 824 F.3d at 539 (citing *Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997) (*abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775-76 (5th Cir. 1999)); *see also Singleton v. Cannizzaro*, 372 F.Supp.3d 389, 405 (E.D. La. 2019) (same).

Here, Evans's claim against Defendant Polhemus stems solely from the prosecutor's initiation of criminal proceedings against Evans. Defendant Polhemus enjoys absolute immunity from such claims, and Evans's claim against him should be dismissed on that basis. Further, Evans's claim appears to sound in malicious prosecution, but under established Fifth Circuit precedent, there is no freestanding constitutional tort for malicious prosecution. *See Castellano v. Fragozo*, 352 F.3d 939, 942, 945 (5th Cir. 2003) (en banc) (noting that a freestanding 42 U.S.C. § 1983 claim based solely upon malicious prosecution was not viable, rather, the claimant, must allege "that officials violated specific constitutional rights in connection with a 'malicious prosecution'"). Thus, to the extent that Evans is attempting to assert a malicious prosecution claim against Defendant Polhemus, it may be dismissed on that basis as well.

## Recommendation

The Court should dismiss Evans's complaint under 28 U.S.C. §§ 1915A and 1915(e)(2)B) for failure to state a claim upon which relief can be granted.

Signed June 4, 2021.

                                            REBECCA RUTHERFORD
                                            UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).